UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATRICK BAKATURSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 3:21-cv-00014-GCS |
| DEANNA BROOKHART, and LYNN ) | |
| PITTMAN, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Patrick Bakaturski, an inmate currently in the custody of the Illinois Department of Corrections ("IDOC") and incarcerated at Lawrence Correctional Center ("Lawrence"), brought suit against Defendant Pittman and Defendant Brookhart pursuant to 42 U.S.C. § 1983 on January 21, 2021. (Doc. 8). In his complaint, Plaintiff alleged that Defendant Pittman was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when she failed to treat his broken arm and bone cancer. *Id.* Plaintiff also asserts that Defendant Brookhart was deliberately indifferent to his serious medical needs when she reviewed grievances Plaintiff filed against Defendant Pittman, but did not order Defendant Pittman to provide Plaintiff with proper medical care. *Id.*

Before the Court are Defendant Pittman's and Defendant Brookhart's motions for summary judgment on the question of whether Plaintiff properly exhausted his

administrative remedies. (Doc. 39, 42). Plaintiff timely responded to Defendants' motions in a single responsive pleading on September 30, 2021. (Doc. 46). The Court held a hearing on the motion on November 15, 2021, and took the matter under advisement. (Doc. 51). For the reasons delineated below, Defendant Pittman's motion for summary judgment (Doc. 39) is **DENIED.** Defendant Brookhart's motion for summary judgment (Doc. 42) is **GRANTED in part and DENIED in part.**

## FACTUAL BACKGROUND

In December 2017, Plaintiff slipped and fell, injuring his right arm. (Doc. 16, p. 2). Plaintiff visited the Health Care Unit ("HCU") for treatment. *Id.* The treating physicians provided Plaintiff with medication but did not take an x-ray of his arm. *Id.* Plaintiff alleges that he continued to be in pain for one month after his fall. *Id.*

Plaintiff complained about his arm pain in December 2018 to Defendant Pittman, who was a treating physician at Lawrence. (Doc. 16, p. 2). However, Defendant Pittman took no action. *Id.* On June 11, 2019, Plaintiff again complained of chronic pain and reduced strength and range-of-motion in his injured arm. This time, treating physicians referred Plaintiff for physical therapy. *Id.* Defendant Pittman did not fully review x-rays of Plaintiff's arm until June 23, 2020, when Defendant Pittman informed Plaintiff that an x-ray showed a bone growth in his arm which potentially indicated the presence of cancer. *Id.*

On September 10, 2019, Plaintiff wrote a letter to the Chief Administrative Officer ("CAO") at Lawrence, Defendant Brookhart. (Doc. 16, p. 5). In this letter, Plaintiff describes his ongoing arm pain; however, he also stated that he was receiving treatment

for his arm at that time. *Id*. This letter accompanied a grievance regarding Plaintiff's medical care dated August 10, 2019. (Doc. 43, p. 2). Plaintiff alleges that Defendant Brookhart's failure to take action after receipt of the letter and grievance constituted deliberate indifference to his arm pain. (Doc. 16, p. 5-6).

In both motions, Defendants identify one grievance central to this case, *i.e.*, Grievance #08-19-208, dated August 10, 2019 (the "August 10 grievance"). (Doc. 40, p. 2-3; Doc. 43, p. 2). In this grievance, Plaintiff stated that he was denied a permit for a bottom bunk bed; such a bed would have required less arm strength for Plaintiff to access. (Doc. 40, Exh. A, p. 15). Plaintiff also stated that he wanted a status update regarding when he would begin physical therapy for his injured arm. *Id*. at p. 14. He explained that he had pain from his broken arm for approximately four years. *Id*. At the time he filed the grievance, Plaintiff stated that his right elbow would "burn" when he put too much stress on it and that he would often lose feeling in his hand. (Doc. 43, Exh. A, p. 8). He also noted that when he experienced back pain in 2019, he received physical therapy within five weeks. *Id*.

Plaintiff's counselor denied this grievance on August 13, 2019. (Doc. 40, p. 2). Plaintiff appealed this decision to his grievance officer, and on August 23, 2019, the grievance officer denied the grievance as moot because Plaintiff had already completed physical therapy. (Doc. 40, Exh. A, p. 14). Plaintiff appealed this decision to the CAO, who then denied the grievance on August 27, 2019. (Doc. 40, p. 2). On October 2, 2019, the ARB denied Plaintiff's appeal noting that the prison administrators properly addressed the issue. *Id*. at p. 2-3.

Included with this grievance is Plaintiff's letter to the CAO, Defendant Brookhart. (Doc. 43, Exh. A, p. 9). In this letter, Plaintiff explained that medical officials at Lawrence either misunderstood his requests regarding his arm pain or operated on inaccurate information when he went to physical therapy for treatment. *Id*. Plaintiff asked that he be provided a permit to use the bottom bunk and that the director contact health care officials at Lawrence in order to obtain accurate information. *Id*. Plaintiff also asked that these officials provide written findings regarding his treatment and medical history to the head of the IDOC. *Id*. Though the letter was addressed to Defendant Brookhart via her professional title, it neither referred to her nor accused her of any wrongdoing. *Id*.

A review of Plaintiff's grievance file reveals five additional grievances (the "unappealed grievances");[1] however, Plaintiff did not fully appeal these grievances. On February 22, 2018, Plaintiff filed a grievance requesting a medication renewal from Lawrence health care officials. (Doc. 43, p. 4). Plaintiff received a response from his counselor on March 19, 2018. *Id*. After Plaintiff appealed, his grievance officer denied the grievance on April 3, 2018. *Id*. The CAO concurred with the denial on April 6, 2018. *Id*. Plaintiff did not appeal this decision to the ARB. *Id*.

Plaintiff filed an emergency grievance on December 16, 2019, in which he requested medical care for his injured arm. (Doc. 43, p. 2). However, on December 31, 2019, the grievance officer determined that the grievance was non-emergent. (Doc. 40, p. 3). Plaintiff did not resubmit this grievance through the normal grievance process. *Id*.

---

[1]   Defendant Pittman inadvertently references a June 23, 2020 grievance submitted by a different inmate. (Doc. 43, p. 3). As Plaintiff did not submit that grievance, the Court declines to consider it.

On January 16, 2020, Plaintiff submitted another grievance requesting medical care for his right arm. (Doc. 40, p. 4). Plaintiff received a response from his counselor on January 21, 2020. *Id*. However, he did not appeal the grievance after receiving that decision. *Id*.

On October 23, 2020, Plaintiff filed a grievance in which he discusses pain in his injured arm and requests access to his medical records. (Doc. 40, p. 3-4). Plaintiff's counselor responded on November 2, 2020. *Id*. at p. 4. Plaintiff did not appeal this grievance to his grievance officer. *Id*.

Plaintiff submitted a grievance on May 23, 2021 requesting treatment for his injured elbow. (Doc. 40, p. 4). On June 7, 2021, Plaintiff received a response from his counselor. *Id*. Plaintiff did not submit this grievance to the grievance officer after receiving that decision. *Id*.

## LEGAL STANDARDS

Summary judgment is proper when a moving party demonstrates that the record cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). In order to survive a motion for summary judgment, the non-moving party must provide admissible evidence from which a reasonable jury could find in favor of the non-moving party. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Traditionally, the Court's role in determining a motion for summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but is instead to determine whether there is a genuine issue of material fact. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in

*Pavey v. Conley*, the Seventh Circuit held that a judge, rather than a jury, should determine whether factual issues relating to the defense of the failure to exhaust administrative remedies exist. 544 F.3d 739, 741 (7th Cir. 2008). If the Court determines that a prisoner did not exhaust his administrative remedies, the Court may select one of the three following outcomes: (a) if the plaintiff still has time to do so, the plaintiff must go back and exhaust his administrative remedies; (b) if the plaintiff's failure to exhaust was innocent, as where prison officials prevent a prisoner from exhausting his remedies, the plaintiff must be given another chance to exhaust; or (c) if the failure to exhaust was the prisoner's fault, the case is over. *Id.* at 742.

The PLRA governs lawsuits filed by inmates and states that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a). In order to satisfy the PLRA's exhaustion requirement, prisoners must strictly adhere to the grievance process. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Prisoners must exhaust their remedies before filing suit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust administrative remedies while that suit is pending. *Id*. Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Prisoners must follow a prison's administrative rules when exhausting their remedies. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). As an inmate

confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") in order to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures require prisoners to submit a grievance to a counselor within sixty days of discovering the underlying incident. *See* 20 ILL. ADMIN. CODE § 504.800. The grievance must state the "factual details regarding each aspect of the offender's complaint including what happened, when, the name of any individual involved, and where the incident occurred." 20 ILL. ADMIN. CODE § 504.810(a). If a prisoner is not satisfied with the counselor's response, then that prisoner can submit a formal grievance to the prison's grievance officer. *Id*. at (a)-(b). The officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within two months of receipt of the grievance, when reasonably feasible under the circumstances, the grievance officer must report findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). If the prisoner is still not satisfied with the CAO's decision, the prisoner can formally appeal to the Director through the ARB within thirty days of the CAO's decision. *See* 20 ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the grievance officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its recommendation to the Director, who is then responsible for issuing the IDOC's final decision. *See* 20 ILL. ADMIN. CODE § 504.850(f).

The grievance process also permits an inmate to file an emergency grievance directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO may determine if

there is a substantial risk of imminent personal injury or other serious harm to the offender. *Id.* If the CAO determines that the grievance is a non-emergency, the prisoner is notified in writing that the prisoner may resubmit the grievance as a non-emergency and move forward with the standard grievance process. *See* 20 ILL. ADMIN. CODE § 504.840(c).

The statutory purpose of the PLRA is to "afford corrections officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). This allows the prison administration an opportunity to fix the problem or to reduce damages and to shed light on factual disputes that may arise in litigation. *See Pozo*, 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective grievance. *See Woodford*, 548 U.S. at 83. Unless a prisoner completes the administrative review process by following the rules established for that process, exhaustion has not occurred. *See Pozo*, 286 F.3d at 1023.

## ANALYSIS

As an initial matter, Plaintiff's unappealed grievances do not support his claim that he exhausted his administrative remedies. Prisoners must follow the rules of their specific institution regarding the procedure for and content of grievances. *See Pozo*, 286 F.3d at 1023-24; *Dole*, 438 F.3d at 809. An inmate must complete the administrative review process according to the rules and procedures the IDOC established in order to exhaust

his or her administrative remedies properly. *See Pozo*, 286 F.3d at 1023. This process ensures that the prison administration has had a full opportunity to address the inmate's problem, reduce potential damages, or shed light on factual disputes which may arise in potential litigation. *Id*. at 1023-24. The Seventh Circuit requires strict compliance with exhaustion requirements; inmates must follow all grievance rules as established by the IDOC. *See Applewhite v. Blum*, No. 17-cv-1111-JPG-SCW, 2018 WL 6202115, at *3 (S.D. Ill. Oct. 26, 2018)(citing *Dole*, 438 F.3d at 809). Inmates must therefore file their grievances and appeals of those grievances in "the place, and at the time, the prison's rules require." *Pozo*, 286 F.3d at 1025. Accordingly, when an inmate fails to appeal a grievance to the next level of review as required by a prison's administrative requirements, that grievance remains unexhausted. *See Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002).

The Illinois Administrative Code requires that an inmate first file a grievance with his or her grievance counselor before appealing to the grievance officer and Chief Administrative Officer. *See* 20 ILL. ADMIN. CODE § 504.830(a) and (e). In order to fully appeal a grievance, an inmate must then submit the grievance to the ARB, which issues a final decision. *See* 20 ILL. ADMIN. CODE § 504.830(a). As Plaintiff did not appeal his unappealed grievances to the ARB, these grievances remain unexhausted. Plaintiff explains that he chose not to appeal these grievances to his grievance officer or the ARB because he believed that fully appealing one grievance regarding medical treatment for his arm would be sufficient to exhaust his administrative remedies. (Doc. 46, p. 2). He therefore relies on his August 10 grievance, which is the only grievance fully appealed to the ARB.

Both Defendant Pittman and Defendant Brookhart assert that Plaintiff's August 10 grievance failed to exhaust his administrative remedies because Plaintiff did not name the defendants in the grievance and because Plaintiff did not specifically allege an injury with the detail necessary for prison officials to investigate the claim. (Doc. 40, p. 10-11; Doc. 43, p. 7-8). The August 10 grievance does provide sufficient information for prison officials to investigate Plaintiff's claims regarding Defendant Pittman, thus fulfilling the purposes of administrative exhaustion. However, the grievance does not contain sufficient information for prison officials to investigate Defendant Brookhart.

The Illinois Administrative Code requires that inmates submit grievances with "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN CODE § 504.810(c). However, the regulations do not further specify the amount of detail a prisoner must allege regarding the injury they are grieving. "When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). This standard is comparable to the notice-pleading standard by which courts evaluate a complaint. *Id*. An inmate need not provide specific facts or articulate legal theories; instead, the inmate must "object intelligibly to some asserted shortcoming." *Id*.

A prisoner may meet this standard by providing very little factual detail regarding their injury in a grievance. For example, in *Riccardo v. Rausch*, the plaintiff submitted a grievance stating that the administration does not "do their job[;]" if they did "a sexual

assault should've never happened again." 375 F.3d 521, 524 (7th Cir. 2004). The Court noted that the grievance towed the line between providing information sufficient for prison officials to investigate and failing to intelligibly object to an asserted shortcoming. *Id*. However, because the plaintiff indicated that a sexual assault occurred and stated that officials failed to do their job, the Court reasoned that the prison administration could conclude that officials could have prevented the assault had they intervened. *Id*. In finding that this grievance was properly exhausted, the Court stated that if Illinois wishes to require inmates to provide more details regarding their complaints, the state must adopt regulations so requiring and inform prisoners of the standards they must meet. *Id*.

   Plaintiff provides sufficient information for a prison official to investigate his claims in his August 10 grievance. Plaintiff states that he has suffered from pain in his broken arm for approximately four years. (Doc. 40, Exh. A, p. 14). He also stated that he experienced burning in his elbow and often lost feeling in his hands. *Id*. He further alleged that IDOC officials refused to address or note the cause of his broken arm. *Id*. Finally, Plaintiff compared the treatment he received for his arm to the treatment he received for his back pain in 2019. Plaintiff noted that he received physical therapy within five weeks for his back, but claimed that he had not yet had physical therapy for his arm when he submitted his grievance. *Id*. Based on this information, Plaintiff clearly complained of an untreated arm injury. He also specifically requested physical therapy. This level of detail provides a more than sufficient foundation for prison officials to conclude that Plaintiff was grieving about deliberate indifference to his injured arm.

Plaintiff's failure to name Defendant Pittman explicitly also does not render Plaintiff's August 10 grievance unexhausted. When a plaintiff does not know the name of the person against whom the plaintiff is complaining of in a grievance, the plaintiff may provide as much descriptive information as possible about that person in lieu of a name. *See* 20 ILL. ADMIN. CODE § 504.810(c); *see also Lewis v. Stout*, No. 3:18-CV-2209-MAB, 2020 WL 6271053, at *3 (S.D. Ill. Oct. 26, 2020). Furthermore, when a plaintiff grieves about issues relating to specific care which only one possible defendant could provide, that plaintiff has provided sufficient notice for the IDOC to investigate his claim thus fulfilling the statutory purpose of the PLRA. *See, e.g., Selvie v. Siddiqui*, No. 3:20-cv-00328-GCS, 2021 WL 347836, at *6 n.2 (S.D. Ill. Feb. 2, 2021)(finding that the plaintiff sufficiently described needing specific podiatric care such that the IDOC had the notice necessary to investigate the plaintiff's claim against a particular defendant). *See also Spruill v. Gillis*, 372 F.3d 218, 234 (3rd Cir. 2004)(noting that prison's grievance process excused procedural default of not naming a particular individual when the first level response identified the potentially responsible individual by name). Defendant Pittman was the medical director at Lawrence from February 1, 2019 through July 21, 2020. (Doc. 40, p. 2). Plaintiff's August 10 grievance describes an ongoing lack of treatment for his broken arm, including both symptom management and diagnosis. (Doc. 40, Exh. A, p. 14). As medical director, Defendant Pittman bore the responsibility for diagnostic and treatment decisions for Plaintiff. Accordingly, by describing "health care," Plaintiff

provided the information necessary for prison officials to inquire with Defendant Pittman about Plaintiff's medical care.

Even if Plaintiff had not technically provided the information required by the Illinois Administrative Code, he nevertheless provided a grievance sufficiently detailed to fulfill the purposes of exhaustion under *Pavey*. Prisoners must follow the rules of their specific institution regarding the procedure for and content of grievances. *See Pozo*, 286 F.3d at 1023-24; *Dole*, 438 F.3d at 809. However, a "procedural shortcoming," like failing to list appropriate dates, "amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Maddox v. Love*, 655 F.3d 709, 721-722 (7th Cir. 2011) (internal citations omitted). When prison officials address a prisoner's grievance on its merits without rejecting it on procedural grounds, the "grievance has served its function of alerting the state and inviting corrective action." *Id*. (citing *Riccardo*, 375 F.3d at 524). Defendants cannot then rely on a procedural failure in the grievance to assert that the plaintiff failed to exhaust his administrative remedies. *Id*.

A prison official's decision to address the merits of a grievance without considering its procedural defects indicates that the institution had the information necessary to investigate the plaintiff's claims adequately. *See, e.g., McDaniel v. Meisner*, No. 14-2833, 617 Fed. Appx. 553, 557 (7th Cir. May 28, 2015). Indeed, the grievance officer's response to Plaintiff's August 10 grievance indicates that prison officials had the information necessary to investigate Plaintiff's complaints in this case. Plaintiff's grievance officer noted that Plaintiff had already completed physical therapy, rendering his grievance moot. (Doc. 40, Exh. A, p. 14). This response indicates that the officer had

the information necessary to investigate Plaintiff's medical records for confirmation that Plaintiff received treatment for his complained-of injury. Accordingly, the prison treated Plaintiff's grievance as if it contained information sufficient for an investigation into his medical care, rendering Plaintiff's grievance exhausted after proper appeal with respect to Defendant Pittman.

In contrast, the August 10 grievance and accompanying letter to the Chief Administrative Officer did not contain information sufficient for prison officials to investigate Defendant Brookhart. The grievance does not allege any complaint that prison officials ignored Plaintiff's previous grievances regarding medical care for his injured arm. Although Plaintiff addresses the Chief Administrative Officer in his letter, he does not describe any particular complaint against her; instead, he requests her help in ensuring the administrators reviewing his medical file had the correct information about his arm. (Doc. 43, Exh. A, p. 9). Prison officials responded to the grievance by investigating Plaintiff's medical care, rather than by investigating whether Defendant Brookhart ignored Plaintiff's grievances. (Doc. 40, Exh. A, p. 14). This response indicates that officials could not reasonably conclude from the contents of the grievance that Plaintiff alleged a complaint against Defendant Brookhart. This grievance therefore fails to fulfill the purposes of administrative exhaustion and remains unexhausted with respect to Defendant Brookhart. Plaintiff's August 10 grievance therefore exhausted his claims against Defendant Pittman, but did not exhaust his claims against Defendant Brookhart, and Defendant Brookhart may be dismissed in her individual capacity. However, because Defendant Brookhart is also included in her official capacity for the

purposes of effecting potential injunctive relief, she remains in this case in her official capacity only. *See* (Doc. 16).

## CONCLUSION

For the above-stated reasons, the undersigned **DENIES** Defendant Pittman's motion for summary judgment. (Doc. 39). However, the Court **GRANTS in part and DENIES in part** Defendant Brookhart's motion for summary judgment. (Doc. 42). The Court DIRECTS the Clerk of the Court to DISMISS Defendant Brookhart from this case in her individual capacity only.

**IT IS SO ORDERED.**

**DATED: December 10, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.12.10 14:56:28 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**