## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

PATRICK BAKATURSKI, #R62877,    )
    )
        Plaintiff,    )
    )
vs.    )
    )   **Case No. 3:21-cv-00014-GCS**
DEANNA BROOKHART, et al.,    )
    )
        Defendants.    )
    )
    )
    )
    )

## <u>MEMORANDUM & ORDER</u>

**SISON, Magistrate Judge:**

On January 8, 2021, Plaintiff Patrick Bakaturski, an Illinois Department of Corrections inmate incarcerated at Lawrence Correctional Center ("Lawrence"), filed suit against Defendants. (Doc. 1). During the merit review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, the Court permitted Plaintiff to proceed on the following count: deliberate indifference to a serious medical need in violation of the Eighth Amendment. (Doc. 49, p. 1). The Court also allowed Plaintiff to amend his complaint to add a claim against Lorie Cunningham, the Healthcare Unit Administrator ("HCUA"), for deliberate indifference to his serious medical needs. (Doc. 49, p. 10). Now before the Court is Defendant Cunningham's motion for summary judgment on the issue of exhaustion of remedies. (Doc. 57, 58). For the reasons delineated below, the motion for summary judgment is **DENIED.**

### FACTUAL BACKGROUND

On August 10, 2019, Plaintiff filed a grievance regarding his medical treatment at Lawrence (the "August 10th grievance"). (Doc. 58-1, p. 7). In that grievance, Plaintiff claimed that his right arm had been broken for the past four years, which had resulted in his limited mobility. *Id.* Additionally, Plaintiff claimed that earlier in that same year, his back had been injured three separate times, for which he received physical therapy. *Id.* These medical issues made it difficult for Plaintiff to get in and out of his top bunk bed. *Id.* Two months prior to this grievance, Plaintiff stated that he had requested, but was denied, a bottom bunk permit and was told that he would receive physical therapy treatment for his right arm. *Id.* In the August 10th grievance, Plaintiff appealed his denial of the bottom bunk permit and requested a status update regarding treatment for his right arm. (Doc. 58-1, p. 8). Moreover, at the bottom of the grievance, Plaintiff wrote a "Note to Grievance Officer," in which he asked for the grievance to be forwarded back to "healthcare" so that they could properly address the issue. *Id.*

In response to Plaintiff's August 10th grievance, the Grievance Counselor noted that "as per HCUA, a physical therapy evaluation and physical therapy had both been completed, and the offender was assessed by the MD." (Doc. 58-1, p. 6). Based on this analysis, the Grievance Officer recommended that the grievance be deemed moot. *Id.* The Chief Administrative Officer concurred with this decision. *Id.*

On September 10, 2019, Plaintiff filed another grievance regarding the outcome of his previously filed August 10th grievance (the "September 10th grievance"). (Doc. 58-1, p. 9). In the September 10th grievance, Plaintiff wrote and attached a letter. *Id.* In that

letter, Plaintiff stated that his August 10th grievance was answered on August 23, 2019, and that, on August 27, 2019, Plaintiff was sent to "medical" for physical therapy for his right arm. *Id.* However, Plaintiff claimed that the Grievance Officer gave them wrong information or misunderstood his medical history when that officer responded to Plaintiff's August 10th grievance. *Id.* According to Plaintiff, his physical therapist said Plaintiff's right arm might have been broken and may not have healed properly. *Id.* Plaintiff noted that he was called for an x-ray of his arm on September 4, 2019, and his treatment was still ongoing. *Id.* Plaintiff therefore asked for the grievance to be forwarded back to Lawrence Health Care so that they could get correct information regarding Plaintiff's medical treatment and history. *Id.* Finally, when seeking relief, Plaintiff requested that the bottom bunk permit be granted and that his arm be fixed. *Id.* Plaintiff also requested the director contact the head of medical for Lawrence or Wexford, so that they could review his file and give those written findings regarding Plaintiff's medical treatment and history to his doctor. *Id.*

Plaintiff's September 10th grievance was rejected at the facility level, and Plaintiff successfully appealed the grievance to the Administrative Review Board ("ARB"). (Doc. 58-1, p. 5). In response to Plaintiff's September 10th grievance, the ARB once again denied Plaintiff a bottom bunk permit, finding that the issue was already appropriately addressed by the facility Administration. *Id.* The Acting Director concurred with this decision. *Id.*

LEGAL STANDARDS

Summary judgment is proper when a moving party demonstrates that the record cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). In order to survive a motion for summary judgment, the non-moving party must provide admissible evidence from which a reasonable jury could find in favor of the non-moving party. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Traditionally, the Court's role in determining a motion for summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but is instead to determine whether there is a genuine issue of material fact. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that a judge, rather than a jury, should determine and resolve factual issues relating to the defense of the failure to exhaust administrative remedies. 544 F.3d 739, 741 (7th Cir. 2008). If the Court determines that a prisoner did not exhaust his administrative remedies, the Court will outline one of three potential outcomes: (a) if the plaintiff still has time to do so, the plaintiff must go back and exhaust his administrative remedies; (b) if the plaintiff's failure to exhaust was innocent, as where prison officials prevent a prisoner from exhausting his remedies, the plaintiff must be given another chance to exhaust; or (c) if the failure to exhaust was the prisoner's fault, the case is over. *Id.* at 742.

The Prison Litigation Reform Act ("PLRA") governs lawsuits filed by inmates and states that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  In order to satisfy the PLRA's exhaustion requirement, prisoners must strictly adhere to the grievance process. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Prisoners must exhaust their remedies before filing suit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust administrative remedies while that suit is pending. *Id*. Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Prisoners must follow a prison's administrative rules when exhausting their remedies. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). As an inmate confined within the Illinois Department of Corrections ("IDOC"), Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") in order to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The grievance procedures require prisoners to submit a grievance to a counselor within sixty days of discovering the underlying incident. *See* 20 ILL. ADMIN. CODE § 504.800. The grievance must state the "factual details regarding each aspect of the offender's complaint including what happened, when, the name of any individual involved, and where the incident occurred." 20 ILL. ADMIN. CODE § 504.810(a). If a prisoner is not satisfied with the counselor's response to the grievance, then that prisoner can submit a formal grievance to the prison's grievance officer. *Id*. at (a)-(b). The officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within two months of receipt of the grievance, when

reasonably feasible under the circumstances, the grievance officer must report findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). If the prisoner is still not satisfied with the CAO's decision, the prisoner can formally appeal to the Director through the ARB within thirty days of the CAO's decision. *See* 20 ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the grievance officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its recommendation to the Director, who is then responsible for issuing the IDOC's final decision. *See* 20 ILL. ADMIN. CODE § 504.850(f).

The grievance process also permits an inmate to file an emergency grievance directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO may determine if there is a substantial risk of imminent personal injury or other serious harm to the offender. *Id.* If the CAO determines that the grievance is a non-emergency, the prisoner is notified in writing that the prisoner may resubmit the grievance as a non-emergency and move forward with the standard grievance process. *See* 20 ILL. ADMIN. CODE § 504.840(c).

The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). This allows the prison administration an opportunity to fix the problem or to reduce damages and to shed light on factual disputes that may arise in litigation. *See Pozo*, 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002). Accordingly, a

prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective grievance. *See Woodford*, 548 U.S. at 83. Unless a prisoner completes the administrative review process by following the rules established for that process, exhaustion has not occurred. *See Pozo*, 286 F.3d at 1023.

ANALYSIS

Defendants argue that summary judgment should be granted in Defendant Cunningham's favor because Plaintiff's August 10th grievance did not describe or grieve the actions of Defendant Cunningham. (Doc. 58, p. 8). For this reason, Defendants argue that the August 10th grievance cannot exhaust Plaintiff's administrative remedies as to Defendant Cunningham. *Id.* However, the Court finds that Plaintiff's grievances do sufficiently name Defendant Cunningham, and thus, Plaintiff's administrative remedies were exhausted.

The Illinois Administrative Code requires that a prisoner either name the individuals against whom they are grieving or describe those individuals with "as much descriptive information about the individual as possible." 20 ILL. ADMIN. CODE § 504.810(c). If a grievance officer chooses to address an untimely grievance on its merits, the grievance "has served its function of alerting the state and inviting corrective action[.]" *Maddox v. Love*, 655 F.3d 709, 721-722 (7th Cir. 2011) (internal citations omitted). A procedural deficiency "amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Id.* (internal citations omitted). By responding to a grievance on its merits, the counselor, grievance officer, and the ARB address the

underlying issues and satisfy the purpose of the exhaustion requirement under the PLRA. *See Kane v. Santos*, No. 17-CV-01054-NJR-RJD, 2020 WL 967878, at *4 (S.D. Ill. Feb. 28, 2020).

For example, in *Maddox*, the defendants argued that the plaintiff failed to exhaust his administrative remedies because he did not name the defendants or describe them in his grievance. 655 F.3d at 721. The plaintiff had complained about an administrative decision for which only the defendants in his case had responsibility. *Id.* at 722. The Seventh Circuit therefore held that the plaintiff's grievance served its function by providing prison officials a fair opportunity to address his complaint even though the defendant was not specifically named in the grievance because prison administrators should have known, and in this case, did know, exactly whom to investigate. *Id* at 722.

Here, Plaintiff clearly provided enough descriptive information in his grievances to provide prison officials a fair opportunity to address the complaint with Defendant Cunningham. In the August 10th grievance, Plaintiff requested that the grievance be forwarded to "healthcare" so that they may address his concerns regarding the approval of a bottom bunk permit and to provide a status update on the treatment of his right arm. Furthermore, Plaintiff contended that it had been over two months since he requested that his arm be fixed. He furthermore contended that healthcare had failed to provide Plaintiff the necessary therapy within that timeframe. The Grievance Counselor denied Plaintiff's request for a bottom bunk permit and recommended that the grievance be considered moot. The Chief Administrative Officer concurred with this decision. *Id*.

Consequently, on September 10, 2019, Plaintiff filed another grievance appealing the outcome of his previously filed August 10th grievance. (Doc. 58-1, p. 9). In the September 10th grievance, Plaintiff wrote and attached a letter. *Id.* In that letter, Plaintiff, once again requested that the bottom bunk permit be granted and that his right arm be fixed. *Id.* Additionally, Plaintiff requested that the director contact the head of Medical for Lawrence or Wexford, so that they could review his file and give those written findings regarding Plaintiff's medical treatment and history to his doctor so that he could be properly treated. *Id.* In response to Plaintiff's September 10th grievance, the ARB once again denied Plaintiff a bottom bunk permit, finding that the issue was already appropriately addressed by the facility Administration, and the Acting Director concurred with this decision. (Doc. 58-1, p. 5). As the ARB concurred with the Grievance Officer's decision to deny the grievance on its merits, rather than for any technical deficiency, both the August 10th and September 10th grievance are exhausted.

The Court further finds that, even if the grievances had not been denied on their merits, Plaintiff sufficiently described Defendant Cunningham pursuant to the requirements of the Illinois Administrative Code in his August 10th grievance. Lacking the necessary knowledge to properly identify Defendant Cunningham specifically by name in his grievances, Plaintiff attempted to name her as "healthcare" and as the "head of medical for Lawrence." (Doc. 58-1, p. 7-9). After the merit review, the Court found that Defendants identified Defendant Cunningham as the "Healthcare Unit Administrator" of Lawrence. (Doc. 49, p. 8). Therefore, in his grievances, Plaintiff sufficiently described someone who would be in Defendant Cunningham's position, which provided enough

information for the prison to properly investigate her actions. Accordingly, Plaintiff's

August 10th grievance has been exhausted against Defendant Cunningham.

### CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment (Doc.

58) is **DENIED.**

**IT IS SO ORDERED.**

**DATED:  April 12, 2022.**

Digitally signed
by Judge Sison 2
Date: 2022.04.12
14:10:29 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**