UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATRICK BAKATURSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-cv-00014-GCS |
| | ) |
| LYNN PITTMAN and LORIE CUNNINGHAM, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Now before the Court is Plaintiff's Motion to Seek Relief from the November 2, 2021, Order. (Doc. 91). Plaintiff filed the Motion on October 11, 2022, requesting that the Court reinstate his claims under the Americans with Disabilities Act ("ADA") and allow him to add a *Monell* claim against Lawrence Correctional Center ("Lawrence"). *Id.* Defendants responded in opposition to the Motion on October 25, 2022. (Doc. 92). For the reasons outlined below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Seek Relief from the November 2, 2021, Order. (Doc. 91).

## BACKGROUND

Plaintiff Patrick Bakaturski is an inmate with the Illinois Department of Corrections ("IDOC"), currently incarcerated in Shawnee Correctional Center ("Shawnee"). (Doc. 81, p. 2). Plaintiff was previously incarcerated in Lawrence Correctional Center ("Lawrence") until July 15, 2022. (Doc. 79). On January 8, 2021,

Plaintiff filed his initial complaint alleging that Defendants Rob Jeffreys ("Jeffreys"), Deanna Brookhart ("Brookhart"), and Lynn Pittman ("Pittman") were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff's initial complaint was deficient because it was unsigned. *Id.* On January 11, 2021, the Court ordered Plaintiff to submit a properly signed complaint pursuant to Federal Rule of Civil Procedure 11(a).[1] (Doc. 7). Plaintiff then filed a signed complaint ("Complaint") containing the same allegations on January 19, 2021. (Doc. 8). Plaintiff requested both injunctive relief and monetary damages. *Id.*

On May 19, 2021, the Court conducted a preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 16). The Court construed Plaintiff's allegations into two separate counts: Count I, deliberate indifference to a serious medical need in violation of the Eighth Amendment; and Count II, failure to provide a permit for Plaintiff to sleep in a lower bunk in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 794-794e. (Doc. 16, p. 2-3). The Court dismissed Defendant Jeffreys from Count I because his supervisory position was insufficient to establish liability for deliberate indifference. *Id.* at p. 5. The Court also dismissed Plaintiff's claim against Defendant Pittman for failing to investigate the bone growth in Plaintiff's broken arm because the fact that the reviewing physician took no action or did not order surgery could not be imputed to her position. *Id.* However, the Court found that Count I could proceed against Defendant Pittman for failing to treat

---

1    "[E]very pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented." FED. R. CIV. PROC. 11(a).

his broken arm. *Id*. The Court also allowed Count I to proceed against Defendant Brookhart in both her individual and official capacity. *Id*. at p. 6. As to Count II of Plaintiff's Complaint, the Court dismissed Plaintiff's allegations for failure to state a claim. *Id*. at p. 7. The Court concluded that Plaintiff had failed to adequately plead that he was a qualified individual with a disability as required by the ADA. *Id*. at p. 6.

On August 26, 2021, Plaintiff filed a Motion for Leave to File an Amended Complaint. (Doc. 36). In Plaintiff's Proposed Amended Complaint, he sought to add "L. Cunningham" as a new defendant under Count I, whom he identified as the Health Care Unit Administrator of Lawrence and the Facility Medical Director. (Doc. 49, p. 3-4). Plaintiff also sought to reinstate Count II of his Complaint under the ADA and the Rehabilitation Act. *Id.* at p. 4. The Court granted Plaintiff's motion to add Lori Cunningham as Defendant under Count I for failure to timely review Plaintiff's x-rays and to schedule an annual check-up. *Id.* However, the Court denied Plaintiff's motion to reinstate Count II and to include a *Monell* claim alleging an unconstitutional policy, practice, or custom. *Id*. at p. 16.

Motions for Summary Judgment on the Exhaustion of Administrative Remedies were submitted by Defendants Pittman (Doc. 39) and Brookhart (Doc. 42) on September 20, 2021. On December 10, 2021, the Court denied Defendant Pittman's motion but granted Defendant Brookhart's motion dismissing her from the case in her individual capacity. (Doc. 55).

## DISCUSSION

On November 2, 2021, the Court denied Plaintiff's request for leave to file his amended complaint. (Doc. 49). The amended complaint sought to reinstate Count II (Plaintiff's ADA Claim) and to add a *Monell* claim against Lawrence. (Doc. 49, p. 16). Plaintiff's motion requests that the Court reconsider this denial based on newly obtained evidence supporting each of his claims. (Doc. 91).

Under Rule 59(e) of the Federal Rules of Civil Procedure the Court may alter or amend its judgment upon motion by one of the parties to the case. To be considered under Rule 59(e), the motion must seek to alter or amend a judgment within 28 days after the entry of the judgment. *See* FED. R. CIV. PROC. 59(e). However, this rule does not apply to motions seeking relief from non-final or interlocutory orders. *See, e.g.*, *Braun v. Village of Palatine*, 56 F.4th 542, 554 (7th Cir. 2022)(finding that the rule addresses judgments, not interlocutory dismissal orders); *Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018)(noting "that Rule 59 is not the right procedural hook for seeking reconsideration of a nonfinal order."). In any event, Rule 59(e) cannot apply to Plaintiff's motion because it was not made within 28 days after the entry of the order.

Under Rule 60(b)(2) of the Federal Rules of Civil Procedure, a court may relieve a party from a final judgment or order based upon newly discovered evidence that could not have been discovered in time to move for a new trial. *See* FED. R. CIV. PROC. 60(b)(2). A motion under Rule 60(b) must be made within a reasonable time—no more than a year after the entry of the judgment or order. *See* FED. R. CIV. PROC. 60(c)(1). As a matter of timing, Plaintiff did file his motion within a year after the entry of the order. (Doc. 91).

However, the Court cannot apply Rule 60(b) because the order in question is neither a judgment nor a final order.

The Federal Rules of Civil Procedure do not expressly recognize motions to reconsider. The court, however, "may reconsider interlocutory orders at any time before final judgment." *Terry*, 888 F.3d at 893. *See also Roberts v. Winder*, 16 F.4th 1367, 1385 (10th Cir. 2021)(noting that when asked to reconsider interlocutory orders, district courts are not constrained by the "strict standards" of Rule 59(e) or 60(b)). Because *pro se* filings should be construed liberally, a court should appreciate its authority to revisit interlocutory orders. *See Terry*, 888 F.3d at 893 (citing *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008)). In the instant case, the Court will construe Plaintiff's motion as requesting reconsideration of its previous order.

I.   **Request for Reconsideration to Reinstate ADA Claim**

In Count II of Plaintiff's Complaint, Plaintiff alleged that Defendants Doctor Pittman and Lorie Cunningham violated the ADA by refusing to accommodate Plaintiff with a lower bunk permit. (Doc. 36). The Court previously dismissed Plaintiff's claim because Plaintiff did not demonstrate that his impairment had substantially limited his life activities as required under the ADA. (Doc. 49, p. 16). Plaintiff submits two arguments for the Court to consider in determining whether Count II of Plaintiff's Complaint should be reinstated. First, Plaintiff submits new evidence from Dr. Mark Shima showing that Plaintiff is suffering from an impairment that substantially limits his major life activities. (Doc. 91, p. 3). Second, Plaintiff alleges that the denial of a bottom-bunk-permit by Defendants Pittman and Cunningham against the recommendation of Dr. Shaw led to

his elbow now being disabled; therefore, Plaintiff argues that the denial still amounts to discrimination even though the bunk permit was ultimately granted. *Id.* at p. 4. In this case, the Court finds that Plaintiff's newly submitted evidence cures the prior deficiencies with his ADA complaint. As such, the Court will allow Plaintiff to reinstate his ADA claim as contained in Count II.

The relief available to a plaintiff under the ADA and the Rehabilitation Act are "coextensive." *Jaros v. Illinois Dept. of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). The analysis governing each statutory claim "is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Id.* To prevail on an ADA claim, a plaintiff must establish: (i) "that he is a 'qualified individual with a disability'"; (ii) "that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity"; and (iii) "that the denial or discrimination was 'by reason of' his disability." *Lacy v. Cook County, Illinois*, 897 F.3d 847, 853 (7th Cir. 2018) (quoting *Love v. Westville Correctional Center*, 103 F.3d 558, 560 (7th Cir. 1996)). The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Discrimination under the ADA can be established through the "failure to make 'reasonable modifications in policies, practices, or procedures[.]'" *Lacy*, 897 F.3d at 853 (quoting 28 C.F.R. § 35.130(b)(7)(i)).

Here, Plaintiff submits that the Consult Note dictated by Dr. Mark Shima on

January 7, 2022, constitutes newly discovered evidence that demonstrates to the Court that his elbow condition amounts to an impairment that substantially limits his major life activities—and he is therefore a qualified individual with a disability. Dr. Shima gives his medical opinion as to Plaintiff's condition stating that "there would be no good surgical solution to the extent of [Plaintiff's] joint damage" and that he "should try to preserve function for as long as he is able and then utilize steroid injections if his elbow becomes markedly painful." (Doc. 91, p. 18-19). Dr. Shima further notes that "[it] could be a very good idea for him to be allowed to have a lower bunk and to avoid any heavy repetitive motion at the elbow." *Id.* Dr. Shima's Consult Note memorializes Plaintiff's recommended physical limitations and serves as a record of Plaintiff's impairment as required under the statute. *See* 42 U.S.C. § 12102(1). As such, Dr. Shima's Consult Note sufficiently establishes that Plaintiff is a "qualified individual with a disability" under the ADA. *Lacy*, 897 F.3d at 853. Although this evidence post-dates the current lawsuit and it appears that Plaintiff currently has a lower bunk permit, Plaintiff's theory is that he should have been given a lower bunk permit when he initially requested it. And the failure to provide the lower bunk permit when initially requested caused Plaintiff's elbow to deteriorate further. Therefore, Plaintiff has cured the deficiency in his previous request to reinstate Count II by establishing that he is a qualified individual with a disability.[2]

---

[2] As an additional ground to reinstate Plaintiff's ADA claims in Count II, the Court notes that the definition of disability under the ADA also includes "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(C). The meaning of the phrase is further explained in the ADA as follows:

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter

However, neither the ADA nor the Rehabilitation Act provides for suits against defendants in their individual capacities. *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2nd Cir. 2001). This is because the discrimination prohibitions under the ADA are aimed at a "public entity." 42 U.S.C. § 12132. A "public entity" is defined as "any State or local government" and "any department, agency, . . . or other instrumentality of a State or States or local government . . . ." 42 U.S.C. § 12131. As such, only the state agency or an official acting in his or her official capacity may be sued under these statutes. *See, e.g., Jaros*, 684 F.3d at 670 (noting that "employees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA."). *See also Phelps v. Phillips*, Case No. 14-cv-00891-JPG, 2014 WL 4537315, at *4 (S.D. Ill. Sept. 10, 2014)(noting that "ADA and RA claims cannot proceed against the individual defendants named in connection with the claim."). Thus, Plaintiff's claim should only proceed against the IDOC Director in his/her official capacity. Plaintiff has previously named Defendant Jeffreys as a Defendant in this action, but he is no longer the IDOC Director. The current acting director of the IDOC is Latoya J. Hughes.[3] As such, Plaintiff's ADA claim may proceed against her in her official capacity and shall be dismissed against

---

*because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.*

42 U.S.C. § 12102(3)(A) (emphasis added). Thus, to qualify with a disability under the ADA, Plaintiff need not establish an actual physical impairment that, in fact, limits a major life activity. Rather, it is sufficient to show a perceived impairment regardless of whether said impairment actually limits a major life activity. Based on the Plaintiff's allegations, it can at least be inferred that Plaintiff had a perceived impairment with his elbow that arguably limited a major life activity.

3       Director Jeffreys was previously added as a Defendant in his official capacity for injunctive relief. Because he is no longer the Director of the IDOC, the Clerk of Court is instructed to replace Defendant Jeffreys with Latoya J. Hughes, who is now the Acting Director of the IDOC.

Defendants Cunningham and Pittman. Accordingly, Plaintiff's motion to reinstate Count II is **GRANTED**.

II.     **Request for Reconsideration to Reinstate *Monell* Claim**

The Court previously denied Plaintiff's request for leave to amend his Complaint to include a *Monell* claim against Lawrence Correctional Center. (Doc. 49, p. 16). Plaintiff now seeks to reinstate the same claim based on newly discovered evidence. (Doc. 91, p. 5-9). Plaintiff alleges that the IDOC has a policy, practice, or custom of "denying all injur[ies]" in its correctional centers and facilities through the Wexford "policy of not reporting [or] documenting injur[ies]." (Doc. 91, p. 8). As newly discovered evidence in support of this allegation, Plaintiff submits documents from Wexford's Illinois Operations Policies and Procedures and Prison Operations Policies and Procedures. (Doc. 91, p. 11-17). Defendants assert that Plaintiff has not demonstrated that these documents were in effect at the time of the alleged violations. (Doc. 92, p. 5). Further, Defendants assert that even if the documents were in effect, that the documents would only show that a violation may have occurred, not that either Wexford or the IDOC has or had an unconstitutional policy, practice, or custom. *Id.* Ultimately, the Court agrees with Defendants' position.

In *Monell v. Dept. of Social Services of the City of New York*, the United States Supreme Court held that a municipality may be liable under § 1983 for constitutional violations resulting from a policy or custom of the municipality. 436 U.S. 658, 690–691 (1978). The Seventh Circuit has extended *Monell* beyond municipalities to include private corporations providing government services, such as Wexford. *See Shields v. Illinois Dept.*

*of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). As such, a private corporation that contracts to provide healthcare to inmates may be liable for customs or policies which violate an inmate's constitutional rights. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653-654 (7th Cir. 2021) (internal citations omitted). *See also Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (stating that such "contractors are treated the same as municipalities for liability purposes in a § 1983 action.") (internal citations omitted). Therefore, like municipalities, a corporation that has contracted to provide essential government services may be held liable under § 1983 for violations caused by unconstitutional policies or customs. *See Shields*, 746 F.3d at 789.

A plaintiff may show liability under *Monell* through a variety of theories, including by establishing a widespread custom. *See Glisson v. Indiana Dept. of Corrections*, 849 F.3d 372, 378-379 (7th Cir. 2017) (en banc). Liability may extend to customs "so permanent and well settled as to constitute a custom or usage with the force of law" even though such customs received no formal approval. *See Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)). At the pleadings stage, a *pro se* plaintiff raises a facially plausible right to relief for an unconstitutional policy or practice when that plaintiff alleges that the constitutional violation was "caused by (1) an express . . . policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a[n] . . . agent with final policymaking authority." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 765 (7th Cir. 2021) (quoting *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011)).

Plaintiff is "required to 'plead factual content that allows the court to draw the reasonable inference'" of an actual policy, custom, or practice of intentional discrimination. *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (citations omitted). "A naked statement that a policy or practice exists and caused a constitutional violation is not enough to withstand a motion to dismiss." *Mullen v. Granite City, Illinois*, Case No. 21-cv-472-JPG, 2021 WL 4775287, at *4 (S.D. Ill. Oct. 13, 2021) (citing *Justice v. Town of Cicero*, 577 F.3d 768, 773 (7th Cir. 2009), overruled on other grounds by, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010)). The plaintiff must instead plead a "specific pattern or series of incidents" to support an allegation that a custom or policy existed. *Hollins v. City of Milwaukee*, 574 F.3d 822, 827 (7th Cir. 2009); *see also Nelson v. City of Chicago*, 992 F.3d 599, 607 (7th Cir. 2021). Alleging that a policy, pattern, or practice of deliberate indifference must exist simply because an unspecific number of institutional employees displayed such indifference is insufficient to satisfy even a liberal pleading standard. *See McTigue v. City of Chicago*, 60 F.3d 381, 382-383 (7th Cir. 1995).

Plaintiff's newly discovered evidence are documents that Plaintiff purports to be Wexford Illinois Operations Policies and Procedures. The first policy dated October 2007 states that "all inmates will have unimpeded access to all health care services at the facility." (Doc. 91, p. 11). The second policy dated October 2009 states that "Wexford Health will have a designated Health Authority at each facility responsible for health care services." *Id.* at p. 12. Moreover, the October 2009 policy notes that "the Medical Director is responsible for making and reviewing all medical/clinical decisions." *Id.* In addition to these two documents, Plaintiff also attached Illinois Department of Corrections

Administrative Directive ("AD") 04.03.110 dated August 1, 2010,[4] AD 04.03.100 dated October 1, 2006,[5] and AD 04.03.103 dated July 1, 2014.[6] *Id.* at p. 23-26. Plaintiff has not explained how these documents assist Plaintiff in demonstrating that a Wexford or IDOC policy violated his constitutional rights by contributing to any of his alleged injuries. Combined, these documents only suggest Wexford staff should have answered grievances and given their findings to the IDOC. However, the policies cited by Plaintiff only indicate that the facility administration (IDOC) *may* require Wexford to respond to grievances. *Id.* at p. 14. He does not point to any documentation that Wexford staff were required to respond to such grievances.

Further, Plaintiff's argument is unclear as to whether he is asserting that unnamed IDOC or Wexford employees failed to follow the terms of the Wexford-IDOC Contract or other IDOC or Wexford policies. Plaintiff states that Wexford's policies regarding grievance responses "is not being [e]nforced and instead Lorie Cunningham is answering Medical Grievance on behalf of Wexford in violation of the Contract as her personal policy." (Doc. 91, p. 7). If Plaintiff is arguing the former, there is no breach of contract claim in this matter. The Court has held that "a breach of a contract is not, by itself, a

---

[4] The policy statement of A.D. 04.03.110 reads: "[t]he Department shall require each correctional facility to regulate the dispensing and handling of medications, syringes, needles, and medical instruments used within the facility in accordance with appropriate State and Federal laws." (Doc. 91, p. 23).

[5] The policy statement of A.D. 04.03.100 reads: "[t]he Department shall establish and maintain a medical record for each offender." (Doc. 91, p. 24).

[6] A.D. 04.03.103 is an Amendment to a previously authorized Administrative Directive, which reads: "[u]pon determinations that a nursing evaluation is appropriate, health care staff shall schedule an evaluation. The evaluation shall take place within 24 hours of the request, 72 hours on weekends, or sooner, as clinically indicated." (Doc. 91, p. 26).

constitutional violation." *See Rodriguez v. Krank*, Case No. 3:15-cv-00897-SMY, 2015 U.S. Dist. LEXIS 129292, at *7-8 (S.D. Ill. Sept. 25, 2015). Even so, the Court has further held that inmates are not intended to be third-party beneficiaries to the Wexford-IDOC Contract, and as a result, inmates do not have rights of recovery in alleged breach of contract claims between Wexford and IDOC. *See, e.g., Johnson v. Shah*, Case No. 15-cv-344-SMY-RJD, 2018 WL 724427, at *8 (S.D. Ill. Feb. 6, 2018)(finding that under Illinois law, an individual is only considered a third-party beneficiary "when the benefit to him is intended[]" and noting that Wexford and IDOC have expressly disavowed the creation of any third party beneficiaries in their contracts) (citing *Golden v. Barenborg*, 53 F.3d 866, 870 (7th Cir. 1995)). If Plaintiff is arguing the latter, the Court has consistently indicated that failure to follow a state policy, regulation, or law is not sufficient to demonstrate a constitutional violation. *See J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003). *See also Lewis v. Richards*, 107 F.3d 549, 553 n.5 (7th Cir 1997)(noting that "ignoring internal prison procedures does not mean that a constitutional violation has occurred.") (citing *Langston v. Peters*, 100 F.3d 1235, 1238 (7th Cir. 1996)).

Despite the lack of clarity in Plaintiff's motion, the fact that a violation of Wexford's policies and procedures may have occurred in Plaintiff's case does not sufficiently allege a widespread practice or custom to raise a facially plausible right to relief under *Monell*. Additionally, Plaintiff's new evidence is not enough to allow the Court to evaluate whether there is a plausible custom or practice leading to a violation of inmates' Eighth Amendment rights. Therefore, Plaintiff's motion to reinstate a *Monell* claim alleging an unconstitutional policy, practice, or custom of deliberate indifference to

prisoners' serious medical needs is **DENIED** without prejudice.

## Conclusion

For reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Seek Relief from the November 2, 2021, Order. (Doc. 91). The Court **GRANTS** Plaintiff's Motion to reinstate the ADA claim and allows Plaintiff 30 days from the date of this Order to file an Amended Complaint in this matter against Acting Director Hughes in her official capacity only. The Court **DENIES** Plaintiff's Motion as to the *Monell* Claim without prejudice.

**IT IS SO ORDERED.**

**DATED: May 24, 2023.**

Digitally signed by Judge Sison
Date: 2023.05.24 12:48:56 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**